UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CALVIN D. YEAKEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:17-cv-00542-JMS-DML ) |
| NANCY A. BERRYHILL Acting Commissioner of the Social Security Administration, | ) ) ) |
| Defendant. | ) ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Calvin Yeakey applied for disability insurance benefits from the Social Security Administration ("SSA") on January 4, 2013, alleging an onset date of December 31, 2002. [Filing No. 11-6 at 2.] His application was initially denied on February 5, 2013, [Filing No. 11-4 at 2], and upon reconsideration on March 12, 2013, [Filing No. 11-4 at 8]. Administrative Law Judge Blanca B. de la Torre (the "ALJ") held a hearing on October 22, 2014, [Filing No. 11-2 at 65-96], and held a supplemental hearing on July 6, 2015, [Filing No. 11-2 at 38-62]. The ALJ issued a decision on July 22, 2015, concluding that Mr. Yeakey was not entitled to receive disability insurance benefits. [Filing No. 11-2 at 12.] The Appeals Council denied review on January 13, 2017. [Filing No. 11-2 at 2-7.] On February 21, 2017, Mr. Yeakey timely filed this civil action, asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.]

**I.**
**STANDARD OF REVIEW**

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an

1

inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id. at 217*.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Mr. Yeakey was fifty years old when he filed for disability insurance benefits. [Filing No. 11-6 at 2.][1] Before undertaking the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4), the ALJ found that Mr. Yeakery "last met the insured status requirements of the Social Security Act on December 31, 2007." [Filing No. 11-2 at 17.] Accordingly, for the

---

[1] Both Mr. Yeakey and the Commissioner detailed pertinent facts in their briefs, and the opposing party did not dispute those facts. [Filing No. 14; Filing No. 16.] Because those facts implicate sensitive and otherwise confidential medical information concerning Mr. Yeakey, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

period of time under consideration by the ALJ, Mr. Yeakey was under the age of fifty. *See* 20 C.F.R. 404.1563(c).

Upon conducting the five-step sequential evaluation, the ALJ issued an opinion on July 22, 2015, determining that Mr. Yeakey was not entitled to receive disability insurance benefits. [Filing No. 11-2 at 25.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. Yeakey had not engaged in substantial gainful activity[2] during the period from the alleged onset date of December 31, 2002 through his date last insured of December 31, 2007. [Filing No. 11-2 at 17.]

- At Step Two of the analysis, the ALJ found that Mr. Yeakey suffers from the following severe impairments: obesity, abdominal wall pannus, hypertension, non-insulin diabetes mellitus, asthma, and obstructive sleep apnea. [Filing No. 11-2 at 17-18.]

- At Step Three of the analysis, the ALJ found that Ms. Yeakey did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 11-2 at 18-19.]

- After Step Three but before Step Four, the ALJ found that Mr. Yeakey had the RFC to "lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently." [Filing No. 11-2 at 19.] With customary breaks, the ALJ found that he could sit for six hours of an eight-hour workday and stand and/or walk for one hour at a time for two hours in the workday. In addition, the ALJ found that he could occasionally climb stairs and ramps, balance, stoop, and crouch, but that he could never kneel or crawl or work on ladders, ropes, or scaffolds. Although the ALJ found that Mr. Yeakey could tolerate concentrated exposure to extreme heat, wetness, and humidity, he could not tolerate exposure to fumes, odors, gases, and other lung irritants, unprotected heights or moving machinery. [Filing No. 11-2 at 19.]

- At Step Four of the analysis, the ALJ found that Mr. Yeakey is unable to perform any past relevant work. [Filing No. 11-2 at 23.]

- At Step Five of the analysis, the ALJ found that considering Mr. Yeakey's age, education, and RFC, there were jobs that existed in significant numbers in the

---

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

4

national economy that Mr. Yeakey could have performed through the date he was last insured. [Filing No. 11-2 at 24.]

## III.
### DISCUSSION

Mr. Yeakey makes two points regarding the ALJ's decision, each of which the Court will consider in turn.

### A. The ALJ Failed to Evaluate a Physician's Opinion Regarding Chair Size

First, Mr. Yeakey argues that the ALJ erred in failing to evaluate an examining physician's opinion that he could not fit into a standard sized chair. [Filing No. 14 at 7-15.] Mr. Yeakey points to a February 2015 medical records review, in which Dr. Gary Cook opined that Mr. Yeakey could not "fit in a normal chair," [Filing No. 11-23 at 44], and required "special seating arrangements," [Filing No. 11-23 at 45]. Mr. Yeakey contends that the ALJ's failure to acknowledge or evaluate Dr. Cook's opinion regarding chair size "was legal error." [Filing No. 14 at 12.] Although the ALJ accorded less weight to Dr. Cook's opinions "on the ground that Dr. Cook based his opinions on evidence after Mr. Yeakey's December 31, 2007 date last insured," Mr. Yeakey points out that the ALJ did not find that his condition was "materially different" in 2015 than in 2007, such that he "could fit in a normal chair in 2007 but not in 2015." [Filing No. 14 at 13 (citing Filing No. 11-1 at 22).] Mr. Yeakey further argues that Dr. Jennifer Carlos, a medical expert whose testimony the ALJ afforded greater weight, never offered an opinion about whether Mr. Yeakey could fit in a normal chair. As such, Mr. Yeakey contends that Dr. Cook's opinion about chair size was "uncontradicted." [Filing No. 14 at 14.]

In response, the Commissioner argues that the Court should "laxly" review the ALJ's assessment of a medical opinion so long as the ALJ "minimally articulates consideration of the various factors in § 404.1527(c)." [Filing No. 16 at 6.] The Commissioner contends that the ALJ

5

did so in this case by giving several uncontested reasons for finding Dr. Cook's entire report irrelevant and unreliable. [Filing No. 16 at 6.] In addition, the Commissioner points out that Dr. Cook's report does not support a finding that Mr. Yeakey was disabled during the relevant period because the report did not discuss any medical evidence from before July 2013, never compared Mr. Yeakey's weight during the relevant period with any other period, and did not offer any proof that Mr. Yeakey "had any limitations—including a need for special seating—during the relevant period." [Filing No. 16 at 6.] Further, the Commissioner states that the ALJ did not need to specifically address each of Dr. Cook's opinions in the report because "as this Circuit recently clarified, an ALJ need only respond to a physician's principal conclusions and not each opinion." [Filing No. 16 at 7.] Finally, the Commissioner contends that the ALJ properly relied upon Dr. Carlos' opinion because she specifically considered evidence of Mr. Yeakey's conditions during the relevant period before rendering her opinion. [Filing No. 16 at 7-8.]

In his reply brief, Mr. Yeakey argues that the ALJ did not give any explanation for rejecting Dr. Cook's opinions about chair size and that "[n]o articulation is not even minimal articulation." [Filing No. 17 at 2.] Citing a Social Security Ruling, Mr. Yeakey argues that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." [Filing No. 17 at 5 (quoting SSR 96-8p).] In addition, he argues that, although an ALJ is not required to evaluate every single opinion a physician provides, the ALJ "was required to evaluate Dr. Cook's specific opinions about Mr. Yeakey's need for a chair because those opinions are potentially dispositive of disability." [Filing No. 17 at 3.] Mr. Yeakey also argues that the Commissioner offered "improper post hoc rationalizations" and misstated the record by: (1) denying that Dr. Cook was an examining physician; and (2) denying that Dr. Cook addressed any evidence prior to 2013. [Filing No. 17 at 3-6.]

6

The ALJ found that during the relevant period, Mr. Yeakey weighed between 406 and 475 pounds and had a large amount of skin—known as a pannus—which he had surgically removed in 2012, five years after the date he was last insured. [Filing No. 11-2 at 17-18.] The ALJ did not discuss whether Mr. Yeakey would require a special bariatric chair designed to accommodate him. No one, including Mr. Yeakey and his attorney, raised the issue of any need for a bariatric chair at either of the two hearings the ALJ conducted. [Filing No. 11-2 at 63; Filing No. 11-2 at 38.]

Four different Federal District Courts have considered social security cases involving bariatric chairs in the past fourteen months. The facts of those cases vary and include an instance where the ALJ included a requirement for a bariatric chair in a claimant's RFC, *Higgins v. Berryhill*, 2017 WL 2501592, at \*2 (E.D. Mo. June 9, 2017), a case in which a VE testified that it would be a reasonable accommodation to provide a claimant with a bariatric chair, *Maietta v. Berryhill*, 2017 WL 4387365, at \*2 (D. Me. Oct. 2, 2017), and two instances where nothing in the record suggested that a claimant required a bariatric chair, *Straite v. Berryhill*, 2017 WL 4052170, at \*4 (W.D.N.C. Sept. 13, 2017); *Harry v. Colvin*, 2016 WL 4708009, at \*1 (N.D. Ga. Sept. 8, 2016). The latter case – *Harry v. Colvin* – was similar to Mr. Yeakey's case in that the issue of a chair "was not raised by Claimant at any stage of the underlying administrative proceedings before the Commissioner . . . and was not made by the Claimant's attorney representative at the evidentiary hearing before the ALJ, which would have allowed the VE to consider the need for special accommodations." *Id.* at \*17. However, none of the relevant cases present a factual scenario where, as here, an ALJ discounted the opinion of a physician who opined that a claimant would require a bariatric chair.

Therefore, rather than relying on cases involving bariatric chairs, the Court must look to the more general authority concerning how an ALJ should analyze medical opinions. 20 C.F.R. §

7

404.1527 governs the manner in which the ALJ considers medical opinions, and provides several factors that the ALJ will consider in deciding the weight to give any medical opinion, including:

> (1) whether the physician examined the claimant, (2) whether the physician treated the claimant, and if so, the duration of overall treatment and the thoroughness and frequency of examinations, (3) whether other medical evidence supports the physician's opinion, (4) whether the physician's opinion is consistent with the record, and (5) whether the opinion relates to the physician's specialty.

*Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). Thus, an ALJ is not permitted simply to discard a medical opinion, but is "required to explicitly consider the details of the treatment relationship and explain the weight" she gives to an opinion. *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (quotations omitted).

In this case, the ALJ clearly analyzed Dr. Cook's opinion consistent with the factors set forth in Part 404.1527, stating:

> I also considered the report by completed by Dr. Gary Cook (Exhibit 10F). However, his opinion is assigned limited weight. First, I note that Dr. Cook is an anesthesiologist who is not yet Board certified (Exhibit 12F), while Dr. Carlos is Board certified in internal medicine, a specialty relevant to the conditions in this case. Second, while Dr. Carlos considered the evidence of record relevant to the alleged onset date and date last insured, Dr. Cook included evidence subsequent to the date last insured and discussed current symptoms. He also inserted discussion of the science behind the impairments rather than discuss the actual abnormalities shown by the evidence. He also opined that the claimant's condition meets Listing 1.04, but this is contradicted by diagnostic studies of the lumbar spine conducted prior to the date last insured (Ex. 9F at 266).

[Filing No. 11-2 at 22.] In reviewing this analysis, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Instead, this Court may reverse based on an ALJ's analysis of a physician's opinion when it is "erroneous" or "illogical." *See, e.g.*, *Brown*, 845 F.3d at 253; *Aurand v. Colvin*, 654 F. App'x 831, 838 (7th Cir. 2016). For example, the Seventh Circuit recently found reversible error where an ALJ decided not to give controlling weight to a physician's opinion but "cited no evidence that

*contradicted*" the physician's opinion. *Brown*, 845 F.3d at 253 (emphasis in original). The Seventh Circuit found this distinction "important" given that "the mere absence of detailed treatment notes, without more, is 'insufficient grounds for disbelieving the evidence of a qualified professional.'" *Id.* at 253 (quoting *Herrmann v. Colvin*, 772 F.3d 1110, 1111 (7th Cir. 2014)). However, Mr. Yeakey's case is distinguishable from *Brown* because here the ALJ clearly cited records that she determined to be inconsistent with Dr. Cook's opinion. [Filing No. 11-2 at 22 (citing Filing No. 11-19).] Similarly, Mr. Yeakey's case is distinguishable from *Aurand v. Colvin*, where the Seventh Circuit found that an ALJ's decision was not supported by substantial evidence because the ALJ did not explain why a physician who never saw the complainant was more qualified than the professionals who did examine him. 654 F. App'x at 838. In Mr. Yeakey's case, the ALJ articulated two reasons why she gave Dr. Carlos' opinion more weight than that of Dr. Cook. The ALJ, therefore, analyzed Dr. Cook's opinion consistent with the factors set forth in Part 404.1527 in a manner that was neither erroneous nor illogical.

Indeed, rather than allege that the ALJ failed to follow Part 404.1527, Mr. Yeakey's argument seems to be that the ALJ was required not only to analyze Dr. Cook's opinion pursuant to the factors in 20 C.F.R. § 404.1527(c), but also to specifically explain her reasoning for discounting the part of Dr. Cook's testimony having to do with a bariatric chair. However, Mr. Yeakey presents no authority to support this argument. To the contrary, the Seventh Circuit has held that "ALJs need not comment on every line of every physician's treatment notes;" instead, it is enough for the ALJ "to recognize and respond to the physician's principal conclusions." *Kolar v. Berryhill*, 695 F. App'x 161 (7th Cir. 2017). In this case, the ALJ recognized and responded to Dr. Cook's principal conclusions by summarizing those conclusions and then explaining why she afforded Dr. Cook's opinion limited weight. [Filing No. 11-2 at 22.]

9

Accordingly, given that the ALJ made findings consistent with Part 404.1527, recognized and responded to Dr. Cook's principal conclusions, and built "an accurate and logical bridge between the evidence and the result," *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014), the Court finds no reversible error in the ALJ's determination to assign limited weight to Dr. Cook's opinion.

**B. Failure to Develop an Adequate Record or Provide a Full and Fair Hearing**

Mr. Yeakey also contends that the administrative record in this case is defective because it does not include arguments he submitted to the Appeals Council. [Filing No. 14 at 15-16.] Mr. Yeakey attached his additional arguments to his brief and argues that this Court should consider the evidence contained therein as "record evidence under sentence three of 42 U.S.C. § 405(g) in this civil action." [Filing No. 14 at 16.]

In response, the Commissioner argues that in his submissions to the Appeals Council, Mr. Yeakey "did not introduce or seek to introduce any new *evidence*" regarding his claim. [Filing No. 16 at 8-9 (emphasis in original).] Therefore, the Commissioner argues that she complied with 42 U.S.C. § 405(g) by filing an administrative record with all of the evidence upon which Mr. Yeakey's claim was decided. [Filing No. 16 at 9.] In addition, the Commissioner argues that Mr. Yeakey "has not explained how any error harmed him." [Filing No. 16 at 9.]

In response Mr. Yeakey clarified his point related to the alleged record defect, stating that he "did not ask the Court to remand to the Agency to correct the record defect," but rather, "asked the Court to recognize that correction." [Filing No. 17 at 8 (emphasis removed).]

The additional arguments presented by Mr. Yeakey in his October 19, 2015 letter to the Appeals Counsel consist of 4 substantive pages that, essentially, mirror those contained in his brief before this Court. [*Compare* Filing No. 14 at 7 *with* Filing No. 14-1 at 4-5; *compare* Filing No.

14 at 11 *with* Filing No. 14-1 at 6.] Therefore, having considered the arguments contained in Mr. Yeakey's brief in part III.A herein, the Court has also given due consideration to the arguments contained in Mr. Yeakey's October 19, 2015 letter to the Appeals Counsel. This is consistent with Mr. Yeakey's request in his brief that the Court consider the October 19, 2015 letter as "record evidence under sentence three of 42 U.S.C. § 405(g)." [Filing No. 14 at 16.] However, as previously explained, even considering the October 19, 2015 letter, the Court finds no reversible error in the ALJ's decision.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* at 274. Taken together, the Court can find no legal basis presented by Mr. Yeakey to reverse the ALJ's decision that he was not disabled during the relevant time period. Therefore, the decision below is **AFFIRMED**. Final judgment shall issue accordingly.

Date: 11/20/2017

*[signature]*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**